**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **BASF PLANT SCIENCE, LP** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 17-421** |
| **NUSEED AMERICAS INC.** | : | |

# MEMORANDUM

**KEARNEY, J.** **August 17, 2017**

The Declaratory Judgment Act allows us to exercise our limited subject matter jurisdiction to invalidate a patent when someone fears they may be sued for infringement. To establish a real and imminent threat of harm absent declaratory relief, the potentially infringing plaintiff must sue the person with the legal right to sue him for infringement. We cannot otherwise invalidate a patent when there is no threat of an infringement suit by the sole defendant who, as a matter of law, cannot sue for infringement. The wrinkle presented today arises when a patent owner authorizes others to negotiate terms of a license agreement with a potential infringer. The issue is the scope of authority given to those agents representing the patent owner in license negotiations but not necessarily vested with the legal right to sue for infringement. When, as here, we address an apparent impetuous impasse in patent license negotiations between a potential infringer and a company negotiating on the patent owner's behalf, we must scrutinize whether there is a real and immediate threat of a patent infringement action by the named defendant against the potential infringer. If not, we lack subject matter jurisdiction and must enter the accompanying Order dismissing the declaratory judgment action against the agent defendant mindful the potential infringer may seek a declaration from a court with personal jurisdiction over the patent owner or another party with the legal right to sue it for infringement.

## I. Facts[1]

As best as we can discern, BASF Plant Science, LP is somehow involved in technologies modifying and commercializing long chain polyunsaturated fatty acids (omega-3 fatty acid) used in "human and animal health."[2] BASF admits Nuseed Americas is a wholly owned subsidiary of Nufarm Ltd. which collaborates with the Commonwealth Scientific and Industrial Research Organization ("CSIRO") and the Australian Grains Research and Development Corporation ("GRDC") in modifying omega-3 fatty acids. CSIRO and GRDC own numerous patents in methods for modifying omega-3 fatty acids, including eight patents at issue here.[3]

In August 2013, a CSIRO director contacted BASF to begin "a broader discussion" regarding cross-licensing of their patents relating to modifying omega-3 fatty acids and included GRDC and Nuseed Pty Ltd. in the discussion.[4] In summer 2016, CSIRO told BASF to negotiate with Nuseed Americas "concerning the U.S. markets in particular."[5]

BASF and Nuseed Americas agreed to confidentiality and began negotiations in October 2016.[6] Nuseed Americas presented BASF with a PowerPoint presentation entitled "Nuseed Omega-3 Patent Portfolio (co-owned or in-licensed)" which includes the eight patents at issue.[7] The parties continued to periodically negotiate.

On January 16, 2017, GRDC's managing director told BASF "CSIRO and GRDC authorise Nuseed, as the exclusive, global licensee of the CSIRO and GFDC technology, to negotiate on their behalf with BASF …. Of course, any negotiated resolution would require an agreement executed by all parties. Pending such resolution, CSIRO will continue overall management of existing and future oppositions and disputes, in relation to the CSIRO and GRDC technology."[8] On January 20, 2017, a CSIRO director sent an identically worded letter to BASF.[9]

On April 13, 2017, BASF and Nuseed Americas negotiated again but the parties' bargaining positions remained far apart.[10] The negotiation ended unsuccessfully with Nuseed Americas not seeing a "path forward" with BASF's numbers. When BASF suggested the parties reached impasse and "should be in court" if Nuseed Americas did not reduce its numbers, Nuseed Americas responded, "Maybe that's where we're at."[11]

Later the same day, BASF sued Nuseed Americas but not the patent owners seeking we declare eight patents owned by CSIRO and one jointly owned with GRDC invalid.[12] BASF alleges a real and immediate controversy under the Declaratory Judgment Act because "Nuseed [Americas] has expressed an intent to enforce the Patents-in-Suits against BASF Plant Science, if the parties do not enter into a negotiated license agreement."[13]

To plead the necessary harm for declaratory relief, BASF alleges, "[o]n information and belief, Nuseed [Americas] is the exclusive licensee of each of the Patents-in-Suit" and directs us to a Nuseed press release.[14] The press release describes collaboration between Nuseed (a wholly owned subsidiary of Nufarm Ltd), CSIRO, and GRDC to "use leading edge technology to develop and commercialise vegetable oil which will contain the same high quality, DHA (docosahexaenoic acid) rich long chain omega-3 that traditionally comes from fish." It announces Nuseed, CSIRO, and GRDC signed two agreements, a multiyear collaborative research project and "a global exclusive commercial license to Nuseed for existing and co-developed long chain omega-3 intellectual property."

In response, Nuseed Americas Global General Manager Thomas swears Nuseed Americas is a commercial partner and "does not have any right, title or interest in any of the patents-in-suit."[15] He also swears Nuseed Proprietary Limited is the exclusive licensee of the patents-in-suit "only in the field of plant based production of long chain omega-3 oil in

genetically modified canola seed."[16] Mr. Thomas swears Nuseed Americas and the exclusive licensee of the patents-in-suit, Nuseed Propriety Limited, share the same parent company Nufarm.[17]

## II. Analysis

Nuseed Americas moves to dismiss BASF's Complaint under Fed. R. Civ. P. 12(b)(1) arguing we lack subject matter jurisdiction because Nuseed Americas does not own the patents-in-suit and is not a licensee of the patents-in-suit so there is no standing. Nuseed Americas also moves to dismiss under Fed. R. Civ. P. 12(b)(7) for failure to join necessary parties licensee Nuseed Proprietary Limited and the patent owners CSIRO and GRDC. Nuseed Americas also moves to dismiss under Fed. R. Civ. P. 12(b)(6) arguing BASF fails to state a claim under the Declaratory Judgment Act because BASF's allegations do not show a real and immediate controversy between BASF and Nuseed Americas.

We must first, and always, ensure subject matter jurisdiction. We review Nuseed Americas' motion to dismiss for lack of subject matter jurisdiction under our court of appeals' standard, not the Federal Circuit's, because these standards are "not unique to patent law."[18] Nuseed Americas may facially and factually attack BASF's Complaint for lack of subject matter jurisdiction. After reviewing the parties' briefs, affidavits, and exhibits, we find Nuseed Americas makes a factual based attack because it disputes BASF's allegation it is the exclusive licensee of the patents-in-suit.[19]

BASF bears the burden of proving we have subject matter jurisdiction.[20] In a factual attack, our review is "not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to those allegations."[21] We consider "evidence outside the

pleadings, including affidavits, depositions, and testimony, to resolve any factual issues bearing on jurisdiction."[22]

BASF asks we declare the eight patents-in-suit invalid alleging there is an actual controversy between the parties because Nuseed Americas "expressed an intent to enforce the Patents-in-Suit."[23] Nuseed Americas argues it is neither the patent owner nor the exclusive licensee and cannot have standing to bring a patent infringement suit against BASF. As a result, BASF is suing the wrong party and thus lacks standing to pursue a declaratory judgment against it alone.

**A. Subject matter jurisdiction under the Declaratory Judgment Act.**

BASF's only claim is for declaratory judgment. The Declaratory Judgment Act allows us to "declare the rights" of parties where their dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests."[24] Bound by Article III's case-or-controversy requirement, we determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[25]

The Declaratory Judgment Act does not grant us independent subject matter jurisdiction.[26] Instead, we must examine our jurisdiction over the underlying controversy between the parties.[27] We may only redress a party's action under the Declaratory Judgment Act if we have jurisdiction over the underlying controversy from another source.[28] "Thus, as long as the suit meets the case or controversy requirement of Article III, a district court may have jurisdiction over a declaratory judgment action."[29] The Supreme Court "developed various more specific but overlapping doctrines rooted in the same Article III inquiry" of standing, ripeness,

and mootness as "satisfying these doctrines" is the "absolute constitutional minimum for a justiciable controversy."[30]

We must ensure subject matter jurisdiction.[31] We turn to Nuseed Americas' motion bearing in mind the Supreme Court's instruction we "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."[32] BASF alleges the underlying controversy is Nuseed Americas possibly suing BASF for patent infringement so we begin our analysis by examining whether Nuseed Americas has constitutional standing to bring an infringement action against BASF for the patents-in-suit.

### B. Standing to sue for patent infringement must be resolved first.

Congress allows a patentee to bring a civil action for infringement.[33] Congress defined "patentee" as "not only the patentee to whom the patent was issued but also the successors in title to the patentee."[34] Interpreting those sections together, the Federal Circuit held "ordinarily" the "party holding legal title to the patent" has standing to bring an infringement claim.[35]

Standing becomes more complicated where the patent owner licensed some or all of its patent rights to another party. If a party is "bare licensee, i.e., party with only a covenant from the patentee that it will not be sued for infringing the patent rights, [it] lacks standing to sue third parties for infringement of the patent.… [t]hus, an infringement action brought by a bare licensee must be dismissed. A bare licensee cannot sure its lack of standing by joining a patentee as a party."[36]

Where a patent owner exclusively licenses "all substantial rights" to the patent, the Federal Circuit deemed the exclusive licensee is the "effective" patentee and "may maintain an infringement suit in its own name, without joining the patentee" actually holding legal title.[37]

If an exclusive licensee has less than "all substantial rights", the Federal Circuit "adheres to the principle that a patent owner should be joined, either voluntarily or involuntarily, in any patent infringement suit."[38] We require joinder of the patent owner for prudential standing rather than constitutional standing.[39] "As a prudential principle, an exclusive licensee having fewer than all substantial patent rights possesses standing under the Patent Act as long as it sues in the name of, and jointly with, the patent owner and meets the *Lujan* requirements."[40] The Federal Circuit requires joinder of the patent owner to protect the infringer from multiple lawsuits for the same patent and to allow the patent owner to protect its rights in the patent from invalidity claims or enforceability it might lose in the litigation.[41]

Whether the exclusive licensee has "all substantial rights" is based upon the exclusive right to sue and the licensing rights retained by the patent owner.[42] The Federal Circuit held the right to sue is "critical" and where the patent owner retains the right to sue for infringement "we require joinder of the patent [owner]."[43] If the licensee holds the exclusive right to sue, we then examine the license agreement analyzing the extent of the other rights the patent owner gave up including the exclusive licensee's right to sub-license, patent owner's reversionary interests, duration of license, and patent owner's degree of control over the license among others and we determine if the patent owner will "risk losing a substantial right if the claims are invalidated or the patent held unenforceable."[44]

The Federal Circuit held the same prudential standing applies to defendants in patent declaratory judgment actions and the "accused infringer must likewise join both the exclusive licensee and the patentee in a declaratory action because the patentee is a necessary party."[45]

If we find the exclusive licensee lacks "all substantial rights" to the patents, we dismiss without prejudice to allow the exclusive licensee sue the patent owners in a court which can exercise personal jurisdiction over the defendants.[46]

**C. We lack subject matter jurisdiction over the underlying controversy.**

BASF filed a declaratory judgment action. It alleges a real and immediate controversy between it and Nuseed Americas under the Declaratory Judgment Act because "Nuseed [Americas] has expressed an intent to enforce the Patents-in-Suits against BASF…", in other words, BASF is alleging the real and immediate controversy is Nuseed Americas will sue it for patent infringement.[47] To exercise jurisdiction over BASF's declaratory judgment claim, there must be an underlying justiciable controversy between parties.[48] To meet the constitutional minimum for a justiciable controversy, Nuseed Americas must have standing to bring a ripe, non-moot patent infringement claim against BASF.[49]

**1. Nuseed Americas does not own the patents-in-suit.**

The alleged justiciable controversy is Nuseed Americas bringing a patent infringement suit against BASF because negotiations broke down between the parties. Nuseed Americas argues we lack subject matter jurisdiction because it lacks standing to bring a patent infringement action as it is not the patent owner or the exclusive licensee. Nuseed Americas does not own any of the patents-in-suit, CSIRO owns seven of them, and CSIRO and GRDC co-own one.

**2. Nuseed does not have "all substantial rights" to the patents-in-suit.**

We then turn to BASF's allegation Nuseed Americas is the exclusive licensee of the patents. BASF supports its allegation with an article describing Nuseed, "a wholly owned subsidiary of Nufarm Ltd", as having a "global commercial exclusive license" to omega-3 related intellectual property but does not include which patents.[50] BASF argues throughout the

negotiation process CSIRO and GRDC represented Nuseed, including Nuseed Americas, as its exclusive licensee. Nuseed Americas argues it is not a licensee of CSIRO and GRDC's patents. Instead, Nuseed Americas swears Nuseed Proprietary Limited is the exclusive licensee of the patents-in-suit.

While the parties contest whether Nuseed Americas and/or Nuseed Proprietary Limited are the exclusive licensee, we will proceed on the assumption Nuseed Americas and Nuseed Proprietary Limited are collectively exclusive licensees of the patents-in-suit. But CSIRO and GRDC's use of the title "exclusive licensee" is not enough to confer constitutional standing on Nuseed to bring a patent infringement claim.

"In determining ownership for purposes of standing, labels given by the parties do not control."[51] Instead, we look past the label and determine if CSIRO and GRDC exclusively licensed "all substantial rights" to the patents-in-suit to Nuseed to deem it the "effective" patentee allowing Nuseed to bring a patent infringement suit without the patent owners.[52] In the typical challenge to standing, we would examine the license agreement to determine if the Nuseed had "all substantial rights" to be an "effective" patentee.[53] Nuseed Americas, however, argues it is not party to the license agreement and does not provide of a copy of the license agreement. BASF and Nuseed Americas instead provided affidavits and exhibits demonstrating important limitations of Nuseed's rights as licensee.

Seven months ago, during ongoing negotiations, CSIRO and GRDC wrote letters telling BASF they authorized Nuseed "as the exclusive, global licensee" to negotiate for them. BASF argues this representation confirms Nuseed's standing. The very next sentence, however, directly undercuts a finding Nuseed has "all substantial rights" because CSIRO and GRDC state "of course, any negotiated resolution would require an agreement executed by all parties."[54]

Both letters also inform BASF until all parties reach a negotiated resolution, CSIRO, the patent owner, "will continue overall management of existing and future oppositions and disputes…"[55]

CSIRO and GRDC's letters demonstrate Nuseed does not have "all substantial rights" to the patents-in-suit even without a copy of the license agreement. The two most important rights for a licensee to have "all substantial rights" is "right to sue for infringement" and "the nature of any limits on the licensee's right to assign its interest in the patent."[56]

CSIRO and GRDC informed BASF all parties must agree to a licensing agreement, meaning the patent owners CSIRO and GRDC have not given Nuseed the right to freely assign its interest in the patent. CSIRO informed BASF it retained its right to sue for infringement because CSIRO, patent owner or co-owner of all patents-in-suit, manages all "existing and future oppositions and disputes." The Federal Circuit describes the transfer of the right to sue for infringement as "critical", "[a] key factor, and "the most important consideration."[57] Because CSIRO retained the right to sue for infringement and expressly limits Nuseed's ability to freely sublicense its patents, Nuseed does not have "all substantial rights" in the patents-in-suits.

If Nuseed sued BASF for patent infringement we would dismiss its claim for lack of standing because it did not join the patent owners, CSRIO and GRDC. We, in turn, lack jurisdiction over BASF's declaratory judgment action because our subject matter jurisdiction derives from the underlying controversy, and we lack jurisdiction because Nuseed cannot sue BASF for infringement without joining CSIRO and GRDC.

## III. Conclusion

We appreciate BASF's immediate attempt to seek declaratory relief against the agent with whom it negotiated. But the agent presented no real and imminent threat of suing BASF for patent infringement. Absent an underlying controversy concerning this patent involving the

agent, we must grant Nuseed Americas' motion for dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Nuseed Americas does not have standing as a patentee and BASF failed to join the patent owners, CSIRO and GRDC. We do not reach Nuseed Americas' motions to dismiss under 12(b)(6) and 12(b)(7).

---

[1] Nuseed Americas makes a factual challenge to our subject matter jurisdiction arguing BASF is factually incorrect in alleging Nuseed Americas is the exclusive licensee of the patents-in-suit. We consider the complaint, affidavits, and exhibits to resolve factual issues regarding our subject matter jurisdiction and we are "not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to those allegations." *Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421, 428 (D. Del. 2014) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

[2] Complaint, ECF Doc. No. 1, ¶ 16; Exhibit A to Complaint, ECF Doc. No. 1-1 at 23. The parties do not describe BASF's interest in this business other than possibly being a licensee.

[3] Exhibit C to BASF's Response, ECF Doc. No. 15-1 at 12-17.

[4] Exhibit A to BASF's Response, ECF Doc. No. 15-1 at 2.

[5] Affidavit of Andry Andriankaja, ECF Doc. No. 15 ¶ 6.

[6] *Id.* ¶¶ 7-8.

[7] ECF Doc. No. 15 ¶ 8; ECF Doc. No. 15-1 at 12

[8] Exhibit D to BASF's Response, ECF Doc. No. 15-1 at 19.

[9] Exhibit E to BASF's Response, ECF Doc. No. 15-1 at 21.

[10] Affidavit of Andry Andriankaja, ECF Doc. No. 15, ¶ 10.

[11] *Id.*

[12] Complaint, ECF. Doc. No. 1 ¶¶ 6-13. United States Patent Nos. 7,807,849; 7,834,250;8,106,226; 8,288,572; 8,575,377; 8,809,559; 8,853,432; 9,458,410.

[13] *Id.* ¶ 16.

[14] *Id.* ¶ 15.

[15] Affidavit of Andrew Bruce Thomas, ECF Doc. No. 11, ¶ 5.

[16] *Id.* ¶ 6.

[17] *Id.*

[18] *Clouding IP, LLC*, 61 F. Supp. 3d at 428 (quoting *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380 (Fed. Cir. 2002)) ("We review a dismissal for lack of subject matter jurisdiction according to regional circuit law, since it is a procedural question not unique to patent law.")).

[19] *See id.* (citing *Gould Elec, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

[20] *See id.* (citing *Mortensen*, 549 F.2d at 891).

[21] *Id.* (citing *Mortensen*, 549 F.2d at 891).

[22] *Id.* (citing *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997)).

[23] Complaint, ECF. Doc. No. 1, ¶ 16.

[24] 28 U.S.C. § 2201; *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937)).

[25] *Id.* at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

[26] *See* 28 U.S.C. § 2201; *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)) ("The Declaratory Judgment Act is not an independent basis for subject matter jurisdiction").

[27] *Id.*

[28] *Id.* (internal citations omitted).

[29] *Id.* (citing *Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330 (Fed. Cir. 2007)).

[30] *Id.* at 1336 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (standing); *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967) (ripeness); and *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (mootness)).

[31] *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)) ('subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.").

[32] *Id.* (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

[33] 35 U.S.C. § 281.

[34] 35 U.S.C. § 100(d).

[35] *See Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007) (citing *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005); *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc); *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1130 (Fed. Cir. 1995)).

[36] *Propat*, 473 F.3d at 1193-94 (internal citations omitted).

[37] *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1349 (Fed. Cir. 2016) (quoting *Prima Tek II, LLC v. A–Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000)); *see also Propat*, 473 F.3d at 1193 ("We explained that the requirement that the exclusive licensee must normally join the patent owner in any suit on the patent is a "prudential" requirement, not a constitutional requirement based on Article III limitations, and that an action brought by the exclusive licensee alone may be maintained as long as the licensee joins the patent owner in the course of the litigation").

[38] *Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1347 (Fed. Cir. 2001) (internal citations omitted).

[39] *Id.*

[40] *Id.* (citing *Lujan*, 504 U.S. at 600) (holding "[t]his principle holds true except in extraordinary circumstances).

[41] *See id.* at 1350 (citing *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1343 (Fed. Cir. 2006)).

[42] *See id.*

[43] *See id.*

[44] *See id.*

[45] *A123 Sytem, Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1217 (Fed. Cir. 2010) (citing *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1094 (Fed. Cir. 1998))

[46] *See e.g.***,** *Sicom Systems. Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005) (affirming district court's second dismissal with prejudice of exclusive licensee's patent infringement action with the patent owner because the licensee did not have "all substantial rights" and it was its second failed attempt to establish standing); *Prima Tek II*, 222 F.3d 1372

(affirming dismissal of exclusive licensee's patent infringement action without the patent owner because licensee did not have "all substantial rights")

[47] Complaint, ECF Doc. No. 1, ¶ 16.

[48] *See Prasco*, 537 F.3d at 1335.

[49] *Id.*

[50] Complaint, ECF Doc. No. 1 ¶ 15, http://nuseed.com/corporate-news/australian-scientific-collaboration-set-breakworlds-reliance-fish-long-chain-omega-3/ (last visited August 16, 2017).

[51] *A123 System*, 626 F.3d at 1218.

[52] *Id.*

[53] *See Luminara*, 814 F.3d at 1349 (quoting *Prima Tek II.*, 222 F.3d at 1377). (Where a patent owner exclusively licenses "all substantial rights" to the patent, the Federal Circuit deemed the exclusive licensee is the "effective" patentee and "may maintain an infringement suit in its own name, without joining the patentee" actually holding legal title).

[54] Exhibit D and E to BASF's Response, ECF Doc. No. 15-1 at 19, 21.

[55] *Id.* CSIRO's "continue[d] overall management" of patent disputes could be interpreted to mean Nuseed does not have the right to enforce patent infringement under the exclusive licensing agreement.

[56] *Luminara*, 814 F.3d at 1350.

[57] *Id.* (quoting *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.,* 604 F.3d 1354, 1361 (Fed. Cir. 2010) and *Aspex Eyewear*, 434 F.3d at 1342).